**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**Bobby Hicks,** *et al.,*

    **Plaintiffs,**

    **v.**

**Ampacet Ohio, LLC,** *et al.,*

    **Defendants.**

**Case No. 2:16–cv–182**

**Judge Michael H. Watson**
**Magistrate Judge Deavers**

## OPINION AND ORDER

This is a putative collective action under the Fair Labor Standards Act, 29

U.S.C. § 201, *et seq.* ("FLSA") and the Ohio Fair Minimum Wage Standards

Act, Ohio Rev. Code Ann. § 4111.01, *et seq.* ("OFMWSA"), which alleges that

Ampacet Ohio, LLC and Ampacet Sales Corporation (collectively, "Defendants")

failed to pay overtime compensation to employees for time spent at mandatory

pre-shift meetings and mandatory post-shift showers in violation of the FLSA and

OFMWSA. Defendants now move for summary judgment on these claims. ECF

No. 24. Bobby Hicks, Bryan Fleshman, and Lisa Miller (collectively, "Plaintiffs"),

move to conditionally certify a class, move to stay this action pursuant to Federal

Rule of Civil Procedure 56(d), and move for a protective order. ECF Nos. 2, 28 &

30. For the reasons that follow, Defendants' motion for summary judgment and

Plaintiffs' motion for a protective order are **DENIED without prejudice**, Plaintiffs'

motion to stay is **GRANTED**, and Plaintiffs' motion to conditionally certify is

**GRANTED**.

## I. Background

In May of 1999, Defendant Ampacet Ohio, LLC ("Ampacet Ohio"), which is in the business of manufacturing and supplying color and additive masterbatches to the thermoplastics industry, purchased a plant located in Heath, Ohio ("the Heath Plant"). Am. Compl. ¶¶ 17–18, ECF No. 19; First Benvie[1] Decl. ¶ 3, ECF No. 15-1.[2] In connection with its business, Ampacet Ohio employs Production Technicians ("PTs") who, *inter alia*, operate machinery and package materials at the Heath Plant. Am. Compl. ¶ 20, ECF No. 19. In performing these duties, PTs are required to handle chemicals and dyes used to add color to plastics. *Id.* Ampacet Ohio currently employs thirty-two PTs at the Heath Plant, including Plaintiffs. First Benvie Decl. ¶ 25, ECF No. 15-1.[3] *See also* Am. Compl. ¶¶ 14–16, ECF No. 19 (stating that Plaintiffs Hicks and Miller began working for Defendants in or around 1996 and that Plaintiff Fleshman began working for Defendants in or around 2000).

PTs are paid on an hourly basis. *Id.* at ¶ 48. When arriving at and departing from work, PTs, including Plaintiffs, are required to clock in and clock out using a finger-scanning device. *Id.* at ¶ 21. Since at least February 28, 2013, through the present, Plaintiffs normally work five days a week on the third

---

[1] Ampacet Ohio, LLC employs Michael Benvie as the Plant Manager. First Benvie Decl. ¶ 1, ECF No. 15-1. He has overall responsibility for management of the Heath Plant, and all Heath Plant employees and managers report to him. *Id.*

[2] Ampacet Ohio, LLC purchased the Heath Plant from another company, Equistar. First Benvie Decl. ¶ 3. Prior to this purchase, Equistar employed all Heath Plant workers. *Id.*

[3] According to Defendants, Defendant Ampacet Sales Corporation ("Ampacet Sales") employs sales and marketing employees and has never employed Plaintiff Hicks or Plaintiff Fleshman. First Benvie Decl. ¶ 5, ECF No. 15-1.

shift, which lasts from 11:00 p.m. until 7:00 a.m. *Id*. at ¶ 33. Although Defendants pay them for eight hours of work each day, Plaintiffs are actually required to work more than that, from approximately 10:45 p.m. until 7:15 a.m. each day. *Id*. at ¶ 34. Specifically, Plaintiffs and other PTs attend fifteen-minute meetings conducted by Health Plant management prior to the start of their shift each day, which are not compensable. *Id*. at ¶¶ 23–26, 35. In addition, at the conclusion of their shifts, Plaintiffs and other PTs shower in the Defendants' locker rooms for their own safety due to the handling of chemicals during their shifts. *Id*. at ¶¶ 28–30, 45–47. While Defendants previously paid for the fifteen minutes spent showering post-shift, in or around 2008, Defendants advised PTs that this time would no longer be compensable. *Id*. at ¶¶ 31–32. In short, according to Plaintiffs, it is Defendants' policy at the Heath Plant to not pay overtime compensation to any PTs for time spent in the pre-shift meetings and for the post-shift showering in excess of forty hours per week. *Id*. at ¶¶ 51, 61.

On February 29, 2016, Plaintiffs filed the instant action, alleging that Defendants violated Plaintiffs' rights under the FLSA and the OFMWSA by failing to compensate Plaintiffs for overtime pay. Compl., ECF No. 1. Plaintiffs bring this action on behalf of themselves and other similarly-situated persons of the proposed opt-in class, which includes the following:

> All current and former Plant Employees employed by Defendants, at their Heath, Ohio location, for 3 years prior to the date of filing this Complaint who were paid hourly and have not been paid overtime pay for all hours worked in a week in excess of forty for the time spent at mandatory 15-minute pre-shift and for the mandatory post-

shift showering.  (hereinafter "Plant Employees").

Am. Compl. ¶ 51, ECF No. 19.[4]

After filing the action, Plaintiffs moved to conditionally certify the proposed FLSA class.  ECF No. 2.  Defendants have moved for summary judgment on Plaintiffs' claims, ECF No. 24, and, in response, Plaintiffs move to stay this action.  ECF No. 28.  Plaintiffs also move for a protective order.  The Court will address each of the motions, which are fully briefed and ripe for resolution, in turn.

## II.  Summary Judgment and Federal Rule of Civil Procedure 56(d)

In moving for summary judgment, Defendants argue that, pursuant to the Portal-to-Portal Act, 29 U.S.C. § 254, *et seq.*, and as interpreted by *Integrity Staffing Solutions, Inc. v. Busk*, __ U.S. __, 135 S. Ct. 513 (2014), the PTs' pre-shift meetings and post-shift showers are not compensable because these activities are not "integral and indispensable" to the principal activities that the PTs are paid to perform.  The Portal-to-Portal Act exempts employers from liability for future claims based on, *inter alia*, "activities which are preliminary to or postliminary to" an employee's "principal activity or activities."  29 U.S.C. § 254(a)(2).  The term "principal activity or activities" "embraces all activities which are an 'integral and indispensable part of the principal activities[.]'"  *IBP, Inc. v. Alvarez*, 546 U.S. 21, 28–30 (2005) (quoting *Steiner v. Mitchell*, 350 U.S.

---

[4] The original Complaint and Amended Complaint identify the same proposed class. *Compare* Compl. ¶ 44, ECF No. 1, *with* Am. Compl. ¶ 51, ECF No. 19.

247, 252–53 (1956)).  "An activity is . . . integral and indispensable to the principal activities that an employee is employed to perform if it is an intrinsic element of those activities and one with which the employee cannot dispense if he is to perform his principal activities."  *Integrity Staffing*, 135 S. Ct. at 517.

Here, the parties disagree as to whether the pre-shift meetings and post-shift showers are "integral and indispensable" to the PTs' "principal activities"—and therefore are compensable—and as to whether discovery is necessary to resolve this dispute.  In support of their motion for summary judgment, Defendants refer to a description of PTs' job duties.  *See* PT Job Description PAGEID # 89, ECF No. 14-1.  Defendants also refer to declarations from twenty-four of the thirty-two current PTs regarding, *inter alia*, job duties, pre-shift meetings, and post-shift showers.  *See* PT Decls., ECF No. 14 (collectively, "PT Declarations").[5]  As to post-shift showers, Defendants summarized the PT Declarations as follows:

> *All twenty four* of the PTs who provided declarations under penalty of perjury *agreed* that post-shift showers are optional, not mandatory. All of them stated that no manager had ever told them that post-shift showers were mandatory.  They explained that they were not aware of any chemicals that required them to shower, that they did not know of any reason why employees would need to shower at the Heath plant rather than at home, and that it was possible to safely and effectively perform their job the next day if they chose not to shower after the end of their shift.  Nearly all [twenty three] of them explained that they could get just as clean by showering at home rather than in the plant, and that they could eat or drink after merely

---

[5] Defense counsel interviewed at least twenty-five of the thirty-two current PTs, including Plaintiff Miller before she was a party to this action.  *See id.*; Miller Decl. ¶¶ 5–24, ECF No. 28-2.

washing their hands (not showering). Seven PTs stated that they do not take post-shift showers at all. (One even stated in 20 years working at the plant he had never showered at the facility.) Among the [fifteen] PTs who do regularly shower at the plant, they all stated that they were aware of other PTs who chose not to shower at the plant. Even though the test of compensability does not require that activities be for the benefit of the employee to be non-compensable, several[6] PTs also indicated that the showers are available for the benefit of the PTs—not for Ampacet's benefit—because employees who do not shower may track color dust into their car or homes. No employee—including Plaintiffs—has ever been disciplined for failing to shower after the conclusion of his or her shift. . . . Most importantly, 23 PTs stated in their declarations that post-shift showers are not integral and indispensable to their principal activities, and that they are able to perform their principal activities without taking post-shift showers.

Def. Mot. 13, ECF No. 24 (footnotes with citations omitted) (emphasis in original).

Similarly, Defendants also summarized the PT Declarations as to pre-shift meetings:

All twenty four PTs who signed declarations described principal activities that do not include pre-shift meetings. Twenty three of the PTs testified that it is not necessary for them to attend pre-shift meetings in order to be able to perform their jobs. Many [twenty three] of them explained that the information discussed at the pre-shift meetings can easily be obtained by looking at the "Daily Notes" document posted on the production floor or having a short conversation with a co-worker or the floor supervisor. In fact, many [twelve] PTs stated that they have performed their principal activities without difficulty after missing a pre-shift meeting.

*Id.* at 16 (footnotes with citations omitted).

Defendants go on to argue that, contrary to Plaintiffs' allegations, this evidence establishes that the pre-shift meetings and post-shift showers are not

---

[6] Defendants represent that "several" PTs indicated that the showers are available for the benefit of the employees, but Defendants cite to only one declaration for that assertion. *See* Opp. 14 n.27, ECF No. 24 (citing Kemerer Decl. ¶ 31, ECF No. 14-17).

mandatory.  And even if these activities were mandatory, that fact alone does not automatically render them compensable.  Instead, Defendants argue, the sole question is whether the activities are ones that the PTs cannot dispense with if they are to perform their principal activities.  Defendants contend that the PT Declarations establish that pre-shift meetings and post-shift showers are not integral and indispensable to their principal activities.

In response to Defendants' motion for summary judgment, Plaintiffs move for a stay pursuant to Federal Rule of Civil Procedure 56(d), which establishes the procedure that must be followed when a party determines that additional discovery is necessary to respond to a motion for summary judgment:

> When Facts Are Unavailable to the Nonmovant. If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
>
> (1) defer considering the motion or deny it;
>
> (2) allow time to obtain affidavits or declarations or to take discovery; or
>
> (3) issue any other appropriate order.

Fed. R. Civ. P. 56(d).  In determining whether to grant a request for additional discovery pursuant to Rule 56(d), the Court considers

> a number of factors, including: "(1) when the [moving party] learned of the issue that is the subject of the desired discovery; (2) whether the desired discovery would have changed the ruling []; (3) how long the discovery period had lasted; (4) whether the [moving party] was dilatory in its discovery efforts; and (5) whether the [opposing party] was responsive to discovery requests."

*Thomason v. Amalgamated Local No. 863*, 438 F. App'x 358, 361 (6th Cir. 2011)

(quoting *CenTra, Inc. v. Estrin*, 538 F.3d 402, 420 (6th Cir. 2008)).

Here, the parties focus on the second factor, disagreeing as to whether the proposed discovery would change a ruling on summary judgment.[7] Plaintiffs first point out that no formal discovery has been taken, which militates against granting Defendants' motion for summary judgment. Plaintiffs also contend that they need written discovery and testimony from some or all of the PTs from whom Defendants obtained declarations regarding the following issues:

> The nature of the Production Technicians' job duties; the policies and procedures related to the pre-shift meetings and post-shift showers; Production Technicians' understanding of if and why both the meetings and showers are required; information or demonstrations explained at the pre-shift meetings; information regarding the "Daily Notes" board; types of chemical, dyes, and/or pigments Production Technicians come into contact with; and the need to, as well as the consequences of[,] failing to shower at the plant.

Mansell Aff. ¶ 10, ECF No. 28-1. Plaintiffs go on to explain that they expect that such discovery

> will reveal discrepancies in the Production Technicians' testimony and a lack of understanding as to the legal meaning of the language contained in their declarations. This will create a genuine issue of fact as to the precise nature of the Production Technicians' principal job activities, including their duties, the discussions and other tasks that take place at pre-shift meetings, the nature of the chemicals, dyes, and pigments Productions [sic] Technicians come into contact with, and the ability of the Production Technicians to perform their jobs if the pre-shift meetings or showers were eliminated. The conflicting testimony between the Production Technicians' descriptions makes summary judgment on this issue inappropriate[.]

*Id.* at ¶ 11. Plaintiffs also seek discovery from the five unidentified remaining

---

[7] Discovery has been stayed pending resolution of the present motions.

current PTs from whom Defendants did not obtain declarations.  Mansell Aff. ¶ 12, ECF No. 28-1.  Finally, Plaintiffs argue that the nature of the interviews may have impacted the substance of the PT Declarations.  *See* Miller Decl. ¶¶ 6–24, ECF No. 28-2 (describing the interview process and averring that the process was intimidating to her and "made me fearful to provide truthful testimony that did not support the company's position").

Defendants oppose Plaintiffs' motion to stay, arguing, *inter alia*, that the requested discovery is unnecessary because Defendants' arguments that the pre-shift meetings and post-shift showers are not compensable turn on questions of law:  whether those activities are integral and indispensable to Plaintiffs' principal activities.  In light of the PT job description and the PT Declarations, Defendants contend that the nature and details of the PTs' job duties "is essentially undisputed."  Def. Opp. 5, ECF No. 29.  Defendants further argue that each category of discovery identified by Plaintiffs cannot change the Court's ruling on summary judgment.

Defendants' arguments are not well taken.  Although Defendants provided a description of PT job duties and the PT Declarations refer to such duties, the Court is not persuaded at this time that such evidence is dispositive of the question of whether pre-shift meetings and post-shift showers are integral and indispensable to Plaintiffs' and other PTs' principal activities.  For example, Plaintiffs have not had the opportunity to depose any current or former PTs regarding, *inter alia,* the nature and details of their job duties, pre-shift meetings,

and post-shift showers. This is particularly significant where Defendants have had the benefit of interviewing the PTs and deciding what information to highlight or omit in the PT Declarations. In addition, simply because the PT Declarations use the legal terms such as "intrinsic and indispensable" and legal conclusions,[8] does not mean that the PTs fully understood such terms and conclusions and therefore that the PT Declarations sufficiently captured the nature and types PT duties. Moreover, the present record suggests that there may be some variations and additional duties beyond those identified in the job posting and PT Declarations, which in turn informs whether the preliminary and postliminary activities are integral and indispensable to the PTs' principal activities.[9] Finally, the fact that the "Daily Notes" purportedly explain projects being worked on during the shifts and are posted in the working area and outside a supervisor's office does not foreclose discovery on the "Daily Notes." Further inquiry into this

---

[8] Most of the PT Declarations—nineteen of them—purport to identify the PTs' "principal activities" and "intrinsic and indispensable activities." *See* Anderson Decl. ¶¶ 7–9, ECF No. 14-1; Baker Decl. ¶¶ 7–9, ECF No. 14-2; Carney Decl. ¶¶ 7–9, ECF No. 14-7; DeVore Decl. ¶¶ 7–9, ECF No. 14-8; Duncan Decl. ¶¶ 6–8, ECF No. 14-9; Finney Decl. ¶¶ 5–8, ECF No. 14-10; Guilliams Decl. ¶¶ 7–9, ECF No. 14-11; Hartshorn Decl. ¶¶ 7–9, ECF No. 14-12; Hinkle Decl. ¶¶ 7–9, ECF No. 14-13; Johnson Decl. ¶¶ 7–9, ECF No. 14-14; Joseph Decl. ¶¶ 7–9, ECF No. 14-15; Kelly Decl. ¶¶ 7–9, ECF No. 14-16; Kemerer Decl. ¶¶ 7–9, ECF No. 14-17; Leavitt Decl. ¶¶ 6–9, ECF No. 14-18; Morical Decl. ¶¶ 7–9, ECF No. 14-19; Pozzuoli Decl. ¶ 6, ECF No. 14-20; Rodgers Decl. ¶¶ 7–9, ECF No. 14-22; Spring Decl. ¶¶ 7–9, ECF No. 14-23; Yoder Decl. ¶¶ 7–9, ECF No. 14-24. The remaining five PT Declarations purport to describe the PTs' "principal activities." *See* Booher Decl. ¶¶ 5, 7–8, ECF No. 14-3; Booze Decl. ¶¶ 5, 7–8, ECF No. 14-4; Boring Decl. ¶ 7, ECF No. 14-5; Britton, Jr. Decl. ¶¶ 7–9, ECF No. 14-6; Preston Decl. ¶¶ 7–9, ECF No. 14-21.

[9] Indeed, Defendants' apparent inability to secure declarations from the remaining five current PTs, as well as the lack of unanimity on certain topics, *see* Def. Mot.12–18, ECF No. 24, suggest that at least some of the current PTs have relevant information beyond what Defendants presented on summary judgment.

information, *i.e.*, whether they routinely contain the same information as that covered in the pre-shift meetings and/or whether they are truly a substitute for the pre-shift meetings, further illuminates whether the preliminary activities are integral and indispensable to the PTs' principal activities. For all of these reasons,[10] the Court concludes at this time that discovery could change the ruling on summary judgment. Accordingly, Defendants' motion for summary judgment, ECF No. 24, is **DENIED without prejudice**, and Plaintiffs' motion to stay pursuant to Rule 56(d), ECF No. 28, is **GRANTED**.

### III. Conditional Class Certification

#### A. Standard

The FLSA provides a private right of action to "any one or more employees for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). "Similarly situated" persons are permitted to 'opt into' the suit." *Swigart v. Fifth Third Bank*, 276 F.R.D. 210, 213 (S.D. Ohio 2011) (quoting *Comer v. Wal–Mart Stores, Inc.*, 454 F.3d 544, 546 (6th Cir. 2006)). This Court and others typically use a two-phase inquiry to determine whether proposed opt-in plaintiffs are similarly situated to the named plaintiffs within the meaning of the FLSA. *See, e.g., id.* (citing *Comer*, 454 F.3d at 546); *Stanley v. Turner Oil & Gas Prop., Inc.*, No. 2:16-cv-386, 2017 WL 127481, at *4 (S.D. Ohio Jan. 13, 2017) (same).

---

[10] The articulated reasons and issues discussed herein are not intended to be an exhaustive list.

At the first phase, *i.e.*, the "initial notice" stage, the Court "must determine

whether to conditionally certify the collective class and whether notice of the

lawsuit should be given to putative class members." *Swigart*, 276 F.R.D. at 213.

With little or no discovery available at this time, the Court applies "a fairly lenient

standard[.]" *Comer*, 454 F.3d at 547 (internal quotation marks and citations

omitted). *See also Colley v. Scherzinger Corporation*, 176 F. Supp. 3d 730, 732

(S.D. Ohio 2016) ("This burden is not as stringent as that applied to class

certification under Fed. R. Civ. P. 23."). To show at this stage that they are

similarly situated, the named plaintiff must show that "they suffer from a single,

FLSA-violating policy, and [that] proof of that policy or of conduct in conformity

with that policy proves a violation as to all the plaintiffs." *O'Brien v. Ed Donnelly

Enter., Inc.*, 575 F.3d 567, 585 (6th Cir. 2009), *abrogated on other grounds by

Campbell-Ewald Co. v. Gomez*, __ U.S. __, 136 S. Ct. 663 (2016). *See also

Comer*, 454 F.3d at 546–47 (explaining that a named plaintiff need not show that

he is identically situated to, only similarly situated to, the putative class

members); *Swigart*, 276 F.R.D. at 213 (stating that the named plaintiffs "can

show that they are similarly situated by showing that 'their claims [are] unified by

common theories of defendants' statutory violations, even if the proofs of these

theories are inevitably individualized and distinct'") (quoting *O'Brien*, 575 F.3d at

585). "Courts typically look at the following issues: (1) were all the plaintiffs

subject to the same employment classification, (2) were none of the plaintiffs paid

overtime, (3) did all of the plaintiffs have the same or similar job duties, (4) did

the plaintiffs share the same job title." *Stanley*, 2017 WL 127481, at *5 (citing *Swigart*, 276 F.R.D. at 213). "The named plaintiffs may meet their burden by submitting "evidence establishing at least a colorable basis for their claim that a class of 'similarly situated' plaintiffs exists." *Id.* (quoting *Olivo v. GMAC Mortg. Corp.*, 374 F. Supp. 2d 545, 548 (E.D. Mich. 2004)). *See also Comer*, 454 F.3d at 547 (stating that the initial notice stage may be "based on a modest factual showing") (internal quotation marks and citations omitted).

Accordingly, this lenient standard at the first stage "typically results in conditional certification of a representative class." *Comer*, 454 F.3d at 547 (internal quotation marks and citations omitted). Certification of a class at the notice stage, however, is "conditional and by no means final." *Id.* at 546 (internal quotation marks omitted). "The sole consequence of conditional certification is the sending of court-approved written notice to employees, . . . who in turn become parties to a collective action only by filing written consent with the court[.]" *Genesis Healthcare Corp. v. Symczyk*, __ U.S. __, 133 S.Ct. 1523, 1530 (2013) (internal citations omitted). Later, at the second phase of the proceedings, after discovery is completed and the opt-in forms have been submitted, the Court will more closely examine whether the putative plaintiffs are similarly situated. *Stanley*, 2017 WL 127481, at *4. At that stage, the defendant may move to decertify the conditionally certified class "if appropriate based on the individualized nature of the plaintiff's claims." *Swigart*, 276 F.R.D. at 213.

Here, the issue presently before the Court is whether Plaintiffs have met

their burden at the initial notice stage in showing that they are similarly situated to the putative class members, which is discussed *infra*.

**B.    Discussion**

Plaintiffs seek to conditionally certify the proposed opt-in class:

> All current and former Plant Employees employed by Defendants, at their Heath, Ohio location, for 3 years prior to the date of filing this Complaint who were paid hourly and have not been paid overtime pay for all hours worked in a week in excess of forty for the time spent at mandatory 15-minute pre-shift and for the mandatory post-shift showering.

Am. Compl. ¶ 51, ECF No. 19. *See also* Mot. to Certify 9, 11, ECF No. 2 (identifying "an FLSA class consisting of all Defendants' current and/or former Plant Employees, as defined above, at Defendants' Heath, Ohio plant, who [were employed from March 22, 2014, to the present and who] could conceivably pursue claims for overtime wage violations under the FLSA"). Plaintiffs clarify that the proposed class is composed of only PTs employed at Defendants' Heath Plant, not any individual employed at the Heath Plant during the relevant period. Reply 2–3, ECF No. 27.

**1.    Similarly Situated**

The parties argue at length whether Plaintiffs are similarly situated to the putative class. Defendants take the position that the PT Declarations establish that Plaintiffs are significantly different from the putative class because the pre-shift meetings and post-shift showers are not integral and indispensable to the PTs' principal activities. In advancing these arguments, Defendants contend that

the PT Declarations and other evidence demonstrate, *inter alia*, that not all PTs had the same job duties; that not all PTs take post-shift showers; if PTs do shower, the showers vary in length of time; PTs take showers at different points in the day, sometimes before a shift ends; that, while mandatory, the estimated length of time of pre-shift meetings varies widely; and that Plaintiffs often clocked out at or before the end of their shifts.  Plaintiffs, however, contend that Defendants' arguments in this regard essentially require that Plaintiffs and the putative class be identically situated instead of similarly situated.

Plaintiffs' arguments are well taken.  Plaintiffs have satisfied their burden of presenting a modest factual showing that they are similarly situated to the putative class.  Specifically, Plaintiffs present evidence that they and the other PTs were hourly employees who attended mandatory, but unpaid, pre-shift meetings and took mandatory unpaid post-shift showers.  First Fleshman Decl. ¶¶ 6–18, ECF No. 2-1; Second Fleshman Decl. ¶¶ 5–12; First Hicks Decl. ¶¶ 6–18, ECF No. 2-1; Second Hicks Decl. ¶¶ 5–12, ECF No. 27-1; Miller Decl. ¶¶ 2, 15–17, ECF No. 28-2.  In addition, Plaintiffs offer evidence that they share the same job title—PT—and similar job duties as other PTs.  First Fleshman Decl. ¶¶ 3–5, ECF No. 2-1; Second Fleshman Decl. ¶¶ 4–6, 8–12; First Hicks Decl. ¶¶ 3–5, ECF No. 2-1; Second Hicks Decl. ¶¶ 4–6, 8–12, ECF No. 27-1.  To the extent that Defendants contend that the time records undermine Plaintiffs' representations about the amount of unpaid time Plaintiffs worked, Plaintiffs offer sworn testimony addressing that the disparities reflected in their time records,

explaining that Defendants employ a "rounding system," which does not always accurately reflect the actual times Plaintiffs clocked out at the end of their shift. Second Hicks Decl. ¶ 3; Second Fleshman Decl. ¶ 3.

While Defendants offer competing evidence and arguments that Plaintiffs were not similarly situated, those arguments largely go to the merits of Plaintiffs' claims. The Court is satisfied that, under the lenient standard applied at this initial stage of the proceedings, Plaintiffs have met their modest burden of showing that they have a colorable basis for their claim that a class of similarly-situated plaintiffs exists. Notably, "[a]t the notice stage, district courts within the Sixth Circuit typically do not consider the merits of the plaintiff's claims, resolve factual disputes, make credibility determinations, or decide substantive issues." *Swigart*, 276 F.R.D. at 214. Accordingly, although Defendants' arguments "may be compelling, the Court finds it inappropriate to engage in a merits analysis at this stage of the lawsuit." *Id. See also Stanley*, 2017 WL 127481, at *8 (same). In short, Plaintiffs have made a sufficient showing that they are similarly situated to hourly PTs at the Heath Plant who were not paid for overtime.

### 2. Notice Period

Plaintiffs seek to apply a three-year statute of limitations to their claims, but Defendants argue that a two-year limitation is appropriate. Although a two-year statute of limitations applies to FLSA actions, a three-year statute of limitations period applies if the action arises out of a "willful violation." 29 U.S.C. § 255(a). An employer willfully violates the FLSA when it "either knew or showed reckless

disregard for the matter of whether its conduct was prohibited by the statute."
*McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1998) (citing *Trans World
Airlines, Inc. v. Thurston*, 469 U.S. 111, 127 (1985)). *See also Stanley*, 2017 WL
127481, at *9 (citing *McLaughlin*, 486 U.S. at 133). In determining whether to
find a willful violation, this Court has required only a "modest showing" at this
initial phase of the proceedings. *Id.* (finding that a "modest showing" was
appropriate because "what could Plaintiffs produce that would tend to show
willfulness at this stage").

Here, at this initial notice stage, Plaintiffs allege facts sufficient to support
the inference that Defendants recklessly disregarded whether they violated the
FLSA by failing to properly pay Plaintiffs' overtime pay, triggering the application
of the three-year statute of limitations. *See* Am. Compl. ¶ 37 ("Plaintiff Fleshman
voiced his concern with the unpaid pre-shift meetings to management during one
of Defendants' plant-wide meetings. Plaintiff received no response from
Defendants."), ¶ 39 ("Plaintiff Hicks asked the Plant Manager why he was not
getting paid for his time spent attending the meetings if they were mandatory.
Plaintiff Hicks did not receive a response."); ¶ 42 ("Plaintiff Miller inquired as to
why she had to be at the meetings on time if the Production Technicians were
not paid for the time spent in the meetings."); ¶¶ 59–60 ("Defendants knew or
should have known it was required to pay Plaintiffs and the [similarly situated
persons] overtime pay for their attendance at the mandatory pre-shift meetings
and for the time spent showering after completion of their shifts. . . . In fact,

Plaintiffs Hicks, Fleshman, and Miller have all brought the issue of entitlement to pay for attendance at the meetings to the attention of Defendants' management. Yet, no action was taken by Defendants."), ECF No. 19.  *See also* First Fleshman Decl. ¶ 11, ECF No. 2-1 ("I have expressed my concern with the unpaid pre-shift meetings to management during one of Defendants' plaint-wide meetings; however, my concerns were never addressed."); First Hicks Decl. ¶ 11, ECF No. 2-1 ("I inquired as to why I was not getting paid for time spent in the [pre-shift] meetings if the meetings were mandatory.  The Plant Manager did not give me a response.").  Having found enough support in the record to find a willful violation at this stage, the Court concludes that Plaintiffs may provide notice to the following putative class:

> All current and former Production Technicians employed by Defendants, at their Heath, Ohio location, for three years prior to the date of filing this Complaint who were paid hourly and have not been paid overtime pay for all hours worked in a week in excess of forty for the time spent at 15-minute pre-shift meeting and for the post-shift showering.

### 3.    Sufficiency of Notice

"Accurate and timely notice concerning the pendency of the collective action promotes judicial economy because it discourages class members from filing numerous identical suits and instead allows them to pursue their claims in one case where the same issues of law and fact are already being addressed." *Swigart*, 276 F.R.D. at 214.

Here, Plaintiffs proffer a proposed notice and opt-in form to the putative

class. *See* Notice, ECF No. 2-2. Defendants argue that the proposed notice and opt-in form contain a number of deficiencies; Plaintiff has agreed to confer with Defendants and prepare a mutually-agreeable notice and opt-in form. Under these circumstances, the Court finds that an additional fourteen days from the date of this Opinion and Order is necessary to revise and prepare a sufficient notice and opt-in form.

In short, Plaintiffs' motion to conditionally certify a class, ECF No. 2, is **GRANTED** with the caveat that the parties meet and submit a revised notice and opt-in form.

### IV. Protective Order

Finally, Plaintiffs move, pursuant to 29 U.S.C. §§ 215(a)(3) and 216(b) , for entry of a protective order instructing Defendants to cease and desist all unilateral communications with potential opt-in plaintiffs, striking from the record the twenty-four PT Declarations,[11] and issuing an expedited order conditionally certifying the proposed FLSA class. ECF No. 30. In light of the Court's rulings *supra*, however, Plaintiffs' requests for an order striking the PT Declarations and conditionally certifying the putative class are now moot.

As to communicating with potential opt-in plaintiffs, the Court notes that pre-FLSA class certification communication is generally not forbidden. *Cf . Oil Co. v. Bernard*, 452 U.S. 89, 101–02 (1981). However, courts have recognized

---

[11] The Court notes that Plaintiffs did not move to strike the PT Declarations until approximately two months after they were filed.

appropriate limitations on such communications when they are a "misleading, coercive, or an improper attempt to undermine Rule 23 by encouraging class members not to join the suit." *Belt v. Emcare, Inc.*, 299 F. Supp. 2d 664, 667 (E.D. Texas 2003) (citing cases).

Here, based on the present record and after considering the arguments of the parties, the Court is not persuaded that a protective order is warranted at this time. The Court will **DENY without prejudice to renewal** Plaintiffs' motion for protective order, ECF No. 30. Plaintiffs may renew, if appropriate, following the commencement of discovery. Defendants, however, are **ADVISED** that the Court will not tolerate any improper communications, *see Belt*, 299 F. Supp. 2d at 667, with the putative plaintiffs.

## V. Conclusion

In sum, for the foregoing reasons, Defendants' motion for summary judgment, ECF No. 24, is **DENIED without prejudice**, Plaintiffs' motion to stay pursuant to Federal Rule of Civil Procedure 56(d), ECF No. 28, is **GRANTED**. By separate Order, the Court will establish a schedule for discovery. Any concerns regarding the scope of discovery and any appropriate limitations to discovery shall be addressed to the assigned United States Magistrate Judge.

In addition, Plaintiffs' motion to conditionally certify a class, ECF No. 2, is **GRANTED** consistent with the foregoing. In particular, the parties are **ORDERED** to meet and confer to develop a mutually agreeable notice and opt-in form and, within fourteen days from the date of this Opinion and Order, submit a

proposed notice and opt-in form.  To the extent that the parties are unable to agree completely on such language,[12] the parties are **FURTHER ORDERED** to submit a proposed notice and opt-in form that clearly identifies what language is agreed upon and, to the extent there is disagreement, what language each party proposes.

Finally, Plaintiffs' motion for protective order, ECF No. 30, is **DENIED without prejudice to renewal**, if appropriate, following the commencement of discovery.

The Clerk is **DIRECTED** to remove ECF Nos. 2, 24, 28, & 30 from the Court's pending motions list.

**IT IS SO ORDERED.**

*s/Michael H. Watson*
**MICHAEL H. WATSON, JUDGE**
**UNITED STATES DISTRICT COURT**

---

[12] The Court strongly urges the parties to work together and exhaust all extrajudicial efforts to develop mutually agreeable language.